UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JIMMY ALTON LEWIS,<br><br>                Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>                Defendant. | NO. C16-1713-JPD<br><br>ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

Plaintiff Jimmy Alton Lewis appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED.

           I.        FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-three year old man with a high school education and some college. Administrative Record ("AR") at 38. His past work

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER - 1

experience includes employment as a meat deliverer, automotive detailer, and warehouse laborer. AR at 37, 41. Plaintiff was last gainfully employed in October 2012. AR at 37-38.

On June 20, 2013, plaintiff filed a claim for SSI payments, alleging an onset date of October 3, 2012. AR at 12. Plaintiff asserts that he is disabled due to nerve damage in his neck and back, leg pain, headaches, insomnia. AR at 68.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 78, 92. Plaintiff requested a hearing, which took place on December 3, 2014. AR at 33-66. On April 21, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 9-25. Plaintiff's request for review was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On November 4, 2016, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Lewis bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

ORDER - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On April 21, 2015, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since June 20, 2013, the application date.

2. The claimant has the following severe impairments: degenerative disc disease of lumbar spine, degenerative disc disease of cervical spine, and essential hypertension.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can stand/walk for three hours in an eight-hour workday. He cannot perform repetitive pushing or pulling with his left upper extremity. The claimant can occasionally reach overhead. He can frequently balance and occasionally stoop, kneel, crouch, crawl and climb ramps or stairs. He can never climb ladders, ropes or scaffolds. The claimant must avoid even moderate exposure to hazards.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1971 and was 41 years old, which is defined as a younger individual age 18-44, on the date the application was filed.[3]

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 5

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 20, 2013, the date the application was filed.

AR at 14-25.

## VI. ISSUE ON APPEAL

The sole issue on appeal is:

1. Did the ALJ commit harmful error by rejecting the opinions of treating physician Lowell Finkleman, M.D.?

Dkt. 10 at 1; Dkt. 11 at 1.

## VII. DISCUSSION

A. <u>The ALJ Erred in Evaluating the Medical Opinion Evidence</u>

　*1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2. *Lowell Finkleman, M.D.*

Dr. Finkleman is a treating physician who completed two nearly identical DSHS physical functional evaluation questionnaires for plaintiff dated June 13, 2013 and November 21, 2013. AR at 264-68, 304-06. Dr. Finkleman noted that plaintiff's primary physical symptoms include persistent neck and low back pain, sciatica, and multilevel degenerative disc disease. AR at 264, 304. He noted that plaintiff's treatment history included chiropractic care, physical therapy, a pain management consultation, a neurosurgery consultation, epidural steroid injections, and diagnostic imaging. AR at 264, 304. Dr. Finkleman indicated that plaintiff did not have any non-exertional limitations or workplace restrictions, such as chemical sensitivities or inability to work at heights. However, he rated the severity of plaintiff's work-related limitations for his low back pain as "level 4" or "marked," which was defined as "very significant interference with the ability to perform one or more basic work-related activities." AR at 265, 305. Dr. Finkleman opined that plaintiff's low back pain affected his ability to sit, stand, walk, lift, carry, reach, stoop, and crouch. AR at 265, 305. He also rated plaintiff's neck pain as "level 3 to level 4," and found that it affected plaintiff's ability to lift, carry, and reach. AR at 265, 305.[4] Dr. Finkleman opined that plaintiff was unable to meet the demands of sedentary work, and estimated plaintiff's workplace limitations would persist for six to twelve months. AR at 266, 306.

In addition, on January 2, 2013, Dr. Finkleman completed a form that allowed plaintiff access to door-to-door paratransit services. AR at 508. Dr. Finkleman checked a box indicating that plaintiff "is unable, for medical and/or mental health reasons, to independently

---

[4] Dr. Finkleman also noted plaintiff's "situational" depression in both evaluations. AR at 265, 305.

ORDER - 8

negotiate distances of ¾ mile or less without assistance." AR at 508. Dr. Finkleman also included a handwritten note that "[t]his is temporary for 3 months." AR at 508.

The ALJ summarized Dr. Finkleman's physical functional evaluation from June 2013. AR at 23. The ALJ then noted that "he affirmed his opinion in November 2013. However, in January 2014, Dr. Finkleman found the claimant cannot walk three quarters of a mile, but only limited him for three months." AR at 23. The ALJ stated that she gave "little weight to this opinion because he relies on the claimant's subjective complaints of pain. Because I find the claimant's allegations to be less than fully credible, I cannot give significant weight to an opinion based on those allegations." AR at 23. In addition, the ALJ found that "the objective medical evidence does not support Dr. Finkleman's opinion regarding the claimant's limitations." AR at 23. Finally, the ALJ noted that "in Dr. Finkleman's opinion he limits the claimant for only a three-month period, indicating his symptoms are only temporary and likely to improve." AR at 23.

The ALJ's reasons for rejecting Dr. Finkleman's opinions were not specific, legitimate, or supported by substantial evidence in the record. It is undisputed that a physician's reliance to a large extent on a claimant's less than credible subjective reports is a valid basis for discounting that physician's opinion. *See Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1223 (9th Cir. 2010). *See also Morgan v. Commissioner*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts for his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'"). Moreover, the plaintiff has not challenged the ALJ's adverse credibility finding in this case. However, the ALJ did not provide any explanation, or cite any evidence, supporting her finding that Dr. Finkleman unduly relied "to a large extent" on plaintiff's self-report. Rather, Dr. Finkleman's DSHS evaluations indicate that he relied to a

great extent upon objective evidence documenting plaintiff's symptoms, such as a positive EMG test and the multilevel cervical disc disease shown on plaintiff's MRI. AR at 264. In addition, Dr. Finkleman provided chart notes, diagnostic tests, and imaging results to support his opinions. AR at 265, 305, 321-82.

The Commissioner responds that "the record does, in fact, contain evidence that supports the ALJ's finding . . . [State agency physician] Dr. Hale reviewed the evidence of record and concluded that Dr. Finkleman's "opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." Dkt. 11 at 3 (citing AR at 90). However, the ALJ did not cite this portion of Dr. Hale's opinion to support her finding. The Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing, *inter alia*, *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases…")). This was not a specific and legitimate reason given by the ALJ to reject Dr. Finkleman's opinion, as the ALJ gave no explanation for her finding at all.

Second, the ALJ's assertion that "the objective medical evidence does not support Dr. Finkleman's opinion regarding the claimant's limitations" is also not specific or legitimate, or supported by substantial evidence in the record. AR at 23. The ALJ's only explanation of her finding that Dr. Finkleman's opinion is unsupported by objective medical evidence is that "the claimant's clinical examinations and objective test results have not revealed the presence of any acute or chronic abnormalities that would be severe enough to prevent the claimant from performing at least some sedentary to light work activity." AR at 23. However, the Court finds this to be a conclusory assertion that does not adequately explain the ALJ's rejection of

the physical examination results and objective evidence in the record that appears to establish precisely the kind of "acute or chronic abnormalities" that would support Dr. Finkleman' opinions. For example, an October 2012 lumbar MRI demonstrated moderate facet degeneration bilaterally at L5-S1, facet degeneration changes with joint effusions at L3-4, and broad based bulging at L4-5 and L3-4. AR at 262-63. Plaintiff's cervical MRI performed in October 2012 had even greater findings of disc protrusion and nerve root stenosis. AR at 260-61.[5] A May 2013 EMG was positive for mild to moderate left S1 radiculopathy with denervation primarily seen in the gastroc soleus complex. AR at 256-57.

As noted above, Dr. Finkleman referenced plaintiff's lumbar sciatica, positive EMG test, and multilevel cervical disc disease as shown on MRI to support his opinions regarding plaintiff's limitations. Although the diagnostic imaging results included a combination of both negative and positive results, and therefore some "minimal" or "mild" findings, the ALJ fails to acknowledge the fact that those imaging studies also show many "marked" findings that appear to fully support Dr. Finkleman's opinions. Rather than ignoring these "marked" findings, the ALJ needed to fully explain why she believed they did not support his opinions.

Finally, the Court finds that the only reasonable interpretation of Dr. Finkleman's handwritten note in January 2014, AR at 508, was that paratransit services should only be offered on a temporary three-month basis. Dr. Finkleman's handwritten notation does not, as the ALJ asserts, establish that Dr. Finkleman believed plaintiff would only be limited for "a three-month period, indicating his symptoms are only temporary and likely to improve." AR at

---

[5] Although plaintiff also cites to a July 2013 cervical MRI with extensive abnormal findings, the Court was unable to locate these MRI results in the record and plaintiff fails to provide a citation. Dkt. 10 at 4. On remand, the ALJ shall ensure that all MRI results have been included in the administrative record.

ORDER - 11

23. The ALJ's rejection of Dr. Finkleman's opinions on this basis was not specific, legitimate, or supported by substantial evidence.

Accordingly, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Finkleman's opinions that plaintiff is unable to meet the demands of sedentary work and that these limitation on plaintiff's work activities would persist for six to twelve months. AR at 266, 306. This case must be remanded for further administrative proceedings for the ALJ to reevaluate Dr. Finkleman's opinions, and provide legally sufficient reasons for rejecting them, if such a conclusion is warranted. In particular, if the ALJ finds that the objective medical evidence, such as the diagnostic imaging results, are inconsistent with Dr. Finkleman's opinions, the ALJ should more thoroughly explain her reasons for reaching this conclusion. The ALJ is also directed to order a consultative physical examination before the next administrative hearing to further develop the record.

## VIII. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 26th day of April, 2017.

*/s/ James P. Donohue*
JAMES P. DONOHUE
Chief United States Magistrate Judge